UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**DEMARCUS SWAIN**                                                                                     **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 3:22-CV-P63-JHM**

**DWAYNE CLARK**                                                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment by Defendant Dwayne Clark (DN 14). Plaintiff has filed a response (DN 16), and Defendant has filed a reply (DN 17). Thus, this matter is ripe for decision. For the following reasons, Defendant's motion for summary judgment will be granted.

**I.**

Plaintiff initiated this *pro se* 42 U.S.C. § 1983 civil-rights action. The allegations in the complaint (DN 1) pertain to Plaintiff's conditions of confinement when he was incarcerated as a pretrial detainee at the Louisville Metro Department of Corrections (LMDC). Plaintiff alleged that in October 2021 Defendant Clark (the former LMDC Director) housed Plaintiff in conditions that put him at risk for contracting COVID-19 by putting him in a dorm with inmates who had COVID-19. *Id*. He further alleged that at the time of the filing of this action, on February 3, 2022,[1] he was again "housed in a dorm with sick inmates in which [P]laintiff got sick twice" and that he had requested cleaning supplies but that his request had been denied. *Id*. at pp. 4-5. Plaintiff also stated, "[LMDC] officers ignore [P]laintiff's request to see medical . . . ." Plaintiff concluded the complaint by asserting, "Defendant [] put deliberate indifference to [P]laintiff safety in violation

---

[1] Under the prison mailbox rule, the complaint is deemed filed when presented to prison officials for mailing. *See Miller v. Collins*, 305 F.3d 491, 497-98 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266 (1988)). The complaint reflects that Plaintiff delivered it to prison officials for mailing on February 3, 2022).

of the Fourteenth amendment. The dorm [P]laintiff live in is dirty and overcrowded with multiple inmates on the floors [with] no social distancing which the new covid virus is in the dorms." *Id*. Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's claims to proceed.

## II.

In his motion for summary judgment, Defendant argues that he is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA).[2] In support of his motion, Defendant attaches the January 29, 2022, grievance filed by Plaintiff, which both parties agree is the only grievance filed regarding at least some of the issues set forth in the complaint (as evidenced by the fact that it is the only grievance filed by Plaintiff as an attachment to the complaint), and which states:

> Theirs sick inmates with no 6 feet Covid Rules in my dorm which caused me to be sick and I ask multiple officers for cleaning supplies and I got denied due to short of staff and the dorm is dirty we only get to clean our dorm twice a week in its over crowded.

(DN 1-1, DN 14-3). Defendant also attaches LMDC's response to the grievance which is dated August 10, 2022 (DN 14-3); LMDC's Inmate Grievance Policy (DN 14-4); and the affidavit of Stephanie Brown, LMDC's Grievance Coordinator (DN 14-5).

In his motion, Defendant first argues that any claims based upon Plaintiff's conditions of confinement and COVID-19 in October 2021 are unexhausted because Plaintiff did not follow LMDC's Grievance Policy by filing a grievance regarding the issues until January 2022, more than the five days after the October 2021 conditions of confinement occurred. Defendant also argues

---

[2] Defendant also argues that he is entitled to judgment as a matter of law on the merits of Plaintiff's claims against him. Because the Court concludes herein that Defendant is entitled to judgment in his favor because Plaintiff failed to exhaust his administrative remedies, the Court does not address Defendant's merits-based argument regarding Plaintiff's Fourteenth Amendment claims against him.

that the claims Plaintiff asserted regarding his conditions of confinement at the time he filed the complaint are unexhausted because he failed to pursue the grievance beyond its the initial filing.

In response, Plaintiff states that he did not file a timely grievance regarding his conditions of confinement in October 2021 because he knew it would be ineffective. Plaintiff states that the fact that the evidence shows that he did not receive a response to his January 29, 2022, grievance until August 10, 2022, almost seven months after he filed the grievance, and almost four months after he was transferred to another facility, shows that his belief regarding the ineffectiveness and unavailability of LMDC's grievance process was correct. Plaintiff also asserts that he did not file a timely grievance related to his October 2021 concerns because he did not believes his concerns were grievable.

In reply, Defendant argue that Plaintiff's belief concerning the "effectiveness" of LMDC's grievance process does not excuse his failure to file a timely grievance regarding his October 2021 concerns and reasserts that the evidence shows that Plaintiff failed to exhaust the grievance process for the one pertinent grievance he did file. Defendant also contends that Plaintiff's second argument fails because the concerns set forth in the complaint are clearly grievable under LMDC's Grievance Policy.

## III.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts

demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## IV.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or

4

other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies is an affirmative defense, *id.* at 216, which the defendant has the burden to plead and prove by a preponderance of the evidence.

The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. at 532. To meet this requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must have presented his grievance(s) "through one complete round" of the established administrative process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *overruled in part on other grounds by Woodford v. Ngo*, 548 U.S. at 87. "'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Woodford v. Ngo*, 548 U.S. at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). An inmate must demonstrate that he has exhausted all available administrative remedies; when he fails to do so, dismissal of the complaint is appropriate. *See, e.g.*, *Burden v. Price*, 69 F. App'x 675, 676 (6th Cir. 2003).

However, an inmate need only exhaust those remedies that are actually "available"; if an administrative remedy "is not capable of use to obtain relief," then the PLRA will not act as a barrier to suit. *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Supreme Court has identified three situations in which an administrative remedy is not truly available: (1) when a remedy consistently operates as a dead end because prison officers are unwilling or unable to provide relief; (2) when a remedy becomes so opaque it becomes incapable of use; and (3) when prison officers prevent prisoners from taking advantage of a remedy through misrepresentation or intimidation. *Id.* at 643.

### A. October 2021 Claims

Defendant argues that he is entitled to summary judgment regarding Plaintiff's claims based upon his conditions of confinement and COVID-19 in October 2021 because Plaintiff did not file a grievance within five (5) working days after the incident(s) occurred, as LMDC's Grievance Policy requires. And, indeed, the LMDC Grievance Policy provides that "[a] grievance about a specific incident shall be filed within five (5) working days after the incident occurs." (DN 14-4, LMDC Grievance Policy, Section VI(G)(1)(c)). Based upon these undisputed facts, the Court agrees that Plaintiff failed to exhaust these claims.

Plaintiff, however, argues that his failure to exhaust these claims should be excused for two reasons. First, he argues that he did not believe that his urgent concerns regarding his conditions of confinement and COVID-19 in October 2021 would be timely addressed through LMDC's grievance process, as evidenced by the fact that LMDC did not actually respond to the grievance he filed in January until August 2022, almost four months after Plaintiff was transferred out of LMDC. Second, Plaintiff argues that he did not file a grievance regarding his October 2021 concerns because he did not think they were grievable under the LMDC Grievance Policy. He specifically cites to the portion of the Grievance Policy which provides that "health care concerns

6

*not related to the specific treatment protocol of an inmate*" are grievable, *id*. at Section VI(A)(6)) (emphasis added), and states that because he was essentially challenging LMDC's COVID-19 "protocol," his grievance would have been denied as non-grievable.

It is true that a plaintiff need only exhaust such administrative remedies as are available. *See Ross*, 578 U.S. at 642 (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones"). While a prisoner need not exhaust unavailable remedies, he must use available grievance procedures even if he "believe[s] the procedure to be ineffectual or futile." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) ("Faced with a policy that was not clearly unavailable, the only way to determine if the process was available, or futile, was to try."). This requirement "is a strong one." *Id*. As the Sixth Circuit Court of Appeals has explained, "to further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and even where [the prisoners] believe the procedure to be ineffectual or futile. . . ." *Id*. (internal citations and quotation marks omitted). Moreover, the Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure" and that assertions of futility do not excuse a plaintiff from the exhaustion requirement. *Napier*, 636 F.3d at 224.

In light of this jurisprudence on futility, and the undisputed evidence that Plaintiff did not even try to file a timely grievance regarding his concerns about his conditions of confinement and COVID-19 in October 2021, the Court finds that Plaintiff's first argument is without merit. *See also Valentine v. Collier*, No. 20-20207, 956 F.3d 797 (5th Cir. Apr. 22, 2020) (holding that despite the COVID-19 pandemic the PLRA's exhaustion requirements cannot be waived or excused) (relying on *Ross*).

The Court next turns to Plaintiff's argument that he did not file a grievance pertaining to his 2021 conditions of confinement and COVID-19 because he did not believe that these issues were grievable. "Courts have held that an inmate cannot be excused from the grievance process by alleging that it would have been futile to file a grievance because the grievance would have been denied as raising non-grievable issues." *Weathington v. Cnty. of Wayne,* No. 12-13573, 2015 U.S. Dist. LEXIS 79031, at *21-22 (E.D. Mich. May 22, 2015) (citing, *inter alia*, *Melton v. Michigan Corr. Comm'n*, No. 07-15480, 2009 U.S. Dist. LEXIS 21319 (E.D. Mich. Mar. 17, 2009)). In *Melton*, the court stated, "In this case, the plaintiff never followed the [] grievance procedures. He merely alleges that his grievance would have been denied. That is woefully insufficient, and actually demonstrates the merit to the defendants' exhaustion argument." *Id.* at 10. Thus, Plaintiff was required to invoke LMDC's grievance process even if he believed his October 2021 concerns were non-grievable.[3]

For these reasons, the Court finds that Plaintiff failed to exhaust his administrative remedies as to the claims based upon his conditions of confinement in October 2021 and that Defendant is entitled to judgment as a matter of law on these claims.

**B. Ongoing Claims at Time Action was Filed**

As set forth above, Plaintiff's complaint also contained concerns related to his conditions of confinement at the time he filed this action on February 3, 2022. Defendant does not dispute that the grievance Plaintiff filed on January 29, 2022, pertained to at least some of these ongoing

---

[3] Defendant additionally argues that the evidence clearly shows that Plaintiff's belief that any grievance he filed regarding his October 2021 concerns would have been rejected as non-grievable is actually incorrect because Plaintiff would not have been challenging his own medical treatment protocol. However, as explained by the jurisprudence cited above, whether the concerns set forth in a grievance are actually grievable is not relevant to the Court's resolution of this exhaustion argument. The only pertinent issue is whether Plaintiff, despite his reservations, actually filed a grievance or not.

8

issues. Defendant argues, however, that these claims are barred because Plaintiff did not exhaust the LMDC grievance process before he filed the instant action. The Court agrees.

Although Plaintiff argues that he could not have exhausted this grievance because LMDC did not respond to it until August 2022, the LMDC Grievance Policy provides, "An inmate who does not receive a response within forty-five (45) days from the filing of the grievance shall be allowed to pursue his grievance to the next level of review (within five (5) working days)." (DN 14-4, LMDC Grievance Policy, Section VI(G)(2)(j)). Thus, there was another level of grievance contemplated by the policy in this situation, and Plaintiff was required to utilize it. Therefore, because Plaintiff failed to comply with LMDC's Grievance Policy by taking his January 29, 2022, grievance to the next level of review after failing to receive a response within 45 days, during which time Plaintiff was still incarcerated at LMDC, the Court concludes that Defendant is also entitled to judgment on the ongoing claims set forth in the complaint because Plaintiff failed to exhaust his administrative remedies as to these claims.

V.

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (DN 14) is **GRANTED**.

Date:

cc: Plaintiff, *pro se*
 Counsel of Record
4414.011

*Joseph H. McKinley*
Joseph H. McKinley Jr., Senior Judge
United States District Court

July 7, 2023